

# Missouri Court of Appeals

## Southern District

### In Division

| | |
|---|---|
| In the Interest of: R. S., | ) |
| | ) |
| Appellant, | ) |
| | ) No. SD37723 |
| vs. | ) |
| | ) FILED: February 26, 2024 |
| DUNKLIN COUNTY JUVENILE OFFICE, | ) |
| | ) |
| Respondent. | ) |

### APPEAL FROM THE CIRCUIT COURT OF DUNKLIN COUNTY

Honorable H. Mark Preyer, Judge

**AFFIRMED**

R.S. appeals an order entered by the Juvenile Division of the Circuit Court of Dunklin County ("juvenile court"), dismissing the juvenile cause of action and certifying R.S. to be prosecuted as an adult pursuant to section 211.071.[1]  In his sole point on appeal, R.S. contends the juvenile court abused its discretion by certifying him to be prosecuted as an adult under the general laws.  Finding no merit in his contention, we affirm.

### Factual Background and Procedural History

On May 30, 2022, when R.S. was seventeen years old, the Dunklin County Juvenile

---

[1] Unless otherwise indicated, statutory references are to RSMo 2016, as updated through the 2021 cumulative supplement.

Office ("juvenile office") filed a petition alleging that R.S. committed, if charged as an adult, the offenses of assault in the first degree under section 565.050, armed criminal action under section 571.015, unlawful use of a weapon under section 571.030, and endangering the welfare of a child under section 568.045. The petition alleged R.S. "caused serious physical injury to [victim] by shooting [her] in the stomach," "knowingly exhibited . . . a weapon readily capable of lethal use, in an angry or threatening manner," and "knowingly acted in a manner that created a substantial risk to the health" of a four-year-old child who was present in the vehicle when the victim was shot.

The juvenile office filed a motion for certification seeking to certify R.S. for trial as an adult pursuant to section 211.071. The motion alleged in part that R.S. should be certified for trial as an adult because the alleged offenses involved serious physical injury, were violent in nature, and were offenses committed against a person.

In accordance with section 211.071.6, the juvenile office filed a written report containing information to be considered by the juvenile court in determining whether to certify R.S. as an adult. The report indicated that R.S. had several prior referrals in the juvenile system. According to one referral, R.S. fired a weapon from a vehicle, but the case was dismissed due to a lack of evidence. A couple of months later R.S. was seen running away from the scene of a shooting, but it was established that he was the victim of the shooting. R.S. had multiple referrals for being truant from school due to missing 30 unexcused days, leaving school early without permission, being disrespectful, and regularly skipping school, all of which resulted in a 20-day suspension from school. He was warned he could face charges of truancy if he continued missing school. Less than a month before the charged conduct occurred, the juvenile office received yet another referral wherein R.S.' mother reported that he was beyond parental control,

2

"messed up the house and broke[] things." R.S. was not adjudicated delinquent or truant from any of these referrals.

The report also indicated that R.S.' father specified the relationship between them was "delicious" and he "wishes that every father and son had the same relationship." R.S.' mother reported that she and R.S. had a "good relationship sometimes and a bad relationship sometimes," that "she at some points ha[d] to call the police department to have [R.S.] removed from her home because he breaks stuff in her house when he gets mad but will come back and apologize once he calms down," and that this was a "repeated pattern" with R.S.

At the certification hearing, an officer with the Kennett Police Department testified that the victim of the shooting told him she was a passenger in a car driven by a friend (the driver), and another adult along with that adult's four-year-old child who were also passengers in the car. They were driving around looking for the driver's husband. When they eventually located the husband, the driver exited the car and got into an argument with another female. Victim stated that she exited the vehicle, walked around the car to get into the driver's seat and was standing between the open door and the seat of the car when R.S. fired a shot that struck her in the stomach.

Another officer testified that after the incident he advised R.S. of his Miranda rights and interviewed him. R.S. told the officer he was just hanging out at an intersection with some of his family members at the time and some individuals kept coming by wanting to cause problems with some of his family members. R.S. admitted to being involved in the incident and told the officer the gun went off after he pulled it out of his fanny pack. He said he was just "trying to hit the car" when the gun went off, and that he was unaware the bullet fired had struck anyone.

3

Chief Deputy Juvenile Officer Campbell ("JO Campbell") testified regarding R.S.' previous referrals. He also testified regarding several factors of the statutory criteria as follows:

| | |
|---|---|
| Juvenile Office: | Has [R.S.] ever presented to you or, since he's been in detention, any type of self-harming behavior or anything of that nature? |
| JO Campbell: | No, sir. |
| Juvenile Office: | Does he seem to be of stable persona and carry himself as a normal 17-year old would? |
| JO Campbell: | Yes, sir. |
| Juvenile Office: | Understand the nature of what he's gotten himself into? |
| JO Campbell: | Yes. |
| Juvenile Office: | Now as we sit here today, are there any services that the State of Missouri has that you believe would be beneficial or helpful to this Juvenile? |
| JO Campbell: | No, sir. He -- he is, as I said, 17. He'll be 18, I believe, in March. The – the only thing we would have would be Division of Youth Services, which would be pretty short-lived. |
| Juvenile Office: | And essentially, basically, to the -- due to the nature of these charges, do you believe DYS would be beneficial? |
| JO Campbell: | No, sir. |
| Juvenile Office: | And so at this point, are there any other programs that we have in the juvenile system -- |
| JO Campbell: | No, sir. |
| Juvenile Office: | -- that -- that could work? |
| JO Campbell: | No, sir. |

The juvenile court found, in accordance with the statutory criteria set forth in section 211.071.6, that (i) the allegations against R.S. were "some of the most serious offenses described under the Criminal Code" and the community had "a valid expectation of being protected" from such acts; (ii) the allegations involved force and violence against people; (iii) R.S. had been involved in multiple and repeated unadjudicated incidents; (iv) R.S. was not adjudicated as delinquent or truant, but his behavior "has been increasingly serious" and he was described by his mother to be "out of control"; (v) R.S. appeared to "be of normal maturity" and his behavior, based on the written report and his conduct before the court, gave "no indication that he suffer[ed] from any mental or physical health disability"; (vi) there were no community programs sufficient to treat R.S. if the allegations were true, and DYS would not have enough

4

time to treat R.S. because that time would be insufficient "to rehabilitate [R.S.]" and "also insure the protection and safety of the community[,]" as R.S. was 17 years and six months old at the time the hearing occurred; and (vii) R.S. is African-American, but race did not impact the determinations of the juvenile court or the juvenile office. The juvenile court concluded that R.S. was not a proper subject to be dealt with under the provisions of the juvenile code and dismissed the juvenile cause of action, certifying R.S. to be prosecuted as an adult under the general laws. R.S. appeals.

### Standard of Review

"A judgment dismissing a juvenile from the juvenile division's jurisdiction is final and appealable." *D.E.G. v. Juvenile Officer of Jackson Cnty.*, 601 S.W.3d 212, 218 (Mo. banc 2020). "We review the decision to certify a juvenile to the court of general jurisdiction by examining the totality of the circumstances to determine if the [juvenile] court abused its discretion." *Int. of D.J.S.*, 670 S.W.3d 249, 253 (Mo.App. 2023). "A [juvenile] court abuses its discretion when its ruling 'is so unreasonable and arbitrary that it shocks the sense of justice and is clearly against the logic of the surrounding circumstances.'" *Id.* (quoting *Int. of T.D.S.*, 643 S.W. 3d 510, 516 (Mo.App. 2021)). "In reviewing a juvenile court's determination for an abuse of discretion, we will not reweigh the evidence or determine the reliability or credibility of the witnesses." *Int. of D.D.B.*, 660 S.W.3d 65, 74 (Mo.App. 2023). "The facts in evidence and the reasonable inferences are viewed in the light most favorable to the [juvenile] court's judgment when reviewing the sufficiency of the evidence." *Int. of D.G.J.*, 669 S.W.3d 169, 172 (Mo.App. 2023) (internal citation omitted).

### Discussion

R.S. contends the juvenile court abused its discretion in dismissing the juvenile cause of

5

action and certifying him to be prosecuted as an adult under the general laws because the totality

of the circumstances indicated R.S. was a proper subject to be treated under the juvenile code.[2]

With regard to certification hearings under section 211.071, section 211.071.6 requires

the following procedure:

> A written report shall be prepared in accordance with this chapter developing fully all available information relevant to the criteria which shall be considered by the court in determining whether the child is a proper subject to be dealt with under the provisions of [chapter 211] and whether there are reasonable prospects of rehabilitation within the juvenile justice system.  These criteria shall include but not be limited to:
>
> (1) The seriousness of the offense alleged and whether the protection of the community requires transfer to the court of general jurisdiction;
>
> (2) Whether the offense alleged involved viciousness, force and violence;
>
> (3) Whether the offense alleged was against persons or property with greater weight being given to the offense against persons, especially if personal injury resulted;
>
> (4) Whether the offense alleged is part of a repetitive pattern of offenses which indicates that the child may be beyond rehabilitation under the juvenile code;
>
> (5) The record and history of the child, including experience with the juvenile justice system, other courts, supervision, commitments to juvenile institutions and other placements;
>
> (6) The sophistication and maturity of the child as determined by consideration of his or her home and environmental situation, emotional condition and pattern of living;
>
> (7) The age of the child;

---

[2] In his sole point relied on, R.S. states that he was a proper subject to be treated under the juvenile code, in that: (1) although the allegations against R.S. were serious and involved violence, the allegations were not so serious as to weigh strongly against R.S.; (2) there was no pattern of escalating or repetitive conduct to the degree that R.S. should have been certified; (3) there was little evidence showing that R.S. was sophisticated or mature; (4) the evidence that R.S. would not benefit from a commitment to the DYS was particularly weak, and was based on an error of law; and (5) taken together, the evidence showed a reasonable likelihood that R.S. could be rehabilitated in the juvenile justice system.

(8) The program and facilities available to the juvenile court in considering disposition;

(9) Whether or not the child can benefit from the treatment or rehabilitative programs available to the juvenile court; and

(10) Racial disparity in certification.

In assessing these non-exhaustive factors, "the juvenile court is entitled to significant discretion" and "need not give equal weight to each of the listed factors, nor is it required to make an express finding on each one." *Int. of A.R.K. v. Juvenile Officer*, 666 S.W.3d 233, 239 (Mo.App. 2023) (internal citation and quotation marks omitted). "It is only required by section 211.071.7(4) to make findings showing the reasons underlying the court's decision to transfer jurisdiction in a manner that is sufficient to permit meaningful appellate review." *M.T. v. M.T.*, 658 S.W.3d 125, 131 (Mo.App. 2022) (internal quotation marks omitted). Since R.S. challenges the juvenile court's findings with regard to factors one and two, four and five, and six, seven and eight, we address each in turn.

### *Factors 1 and 2*

R.S. first contends the offenses alleged in the petition, while serious, did not indicate he acted so violently to be beyond the possibility of rehabilitation. R.S. draws our attention to the facts that the bullet he fired only grazed the victim, he was unaware anyone was hit by the bullet, and that the victim did not require substantial medical intervention, all suggesting he had neither specific intent to injure nor depravity of mind to preclude all possibility of rehabilitation in the DYS.

Yet the juvenile court, in its discretion, was not required to find R.S. had specific intent or a depraved mind. The first two factors concern the seriousness of the alleged offense, the need for protection of the community, and the elements of viciousness, force, and violence.

7

Section 211.071.6(1)-(2). Section 211.071.6 requires the juvenile court to assess "all available information relevant to the [statutory] criteria." The first three statutory factors are the "most critical considerations in certification." *Int. of D.D.B.*, 660 S.W.3d at 76. "Importantly, the first factor, the seriousness of the alleged offense, is a dominant criterion among the ten factors." *Int. of D.G.J.*, 669 S.W.3d at 173 (internal quotation marks omitted). "In assessing the statutory criteria, such as the seriousness of an alleged offense, the juvenile court is entitled to significant discretion." *Int. of C.L.F. v. Juvenile Officer*, 657 S.W.3d 273, 280 (Mo.App. 2022) (internal citations omitted).

Concerning the first two factors, the juvenile court noted the allegations were "some of the most serious offenses described under the Criminal Code." R.S. admitted that he had the gun in his fanny pack. When he pulled the gun from the fanny pack, he struck the car windshield with the gun and the gun went off. R.S. further stated that he did not see that the bullet had struck a person.

The juvenile court found that R.S.' alleged crimes "significantly increase[ed] the possibility that someone would be seriously injured or killed by the discharge of the firearm." Regarding the second factor, the juvenile court also noted R.S. allegedly "pulled [the weapon] out to, at a minimum intimidate the group of people, and at worst to shoot at them." With "[t]he focus of the juvenile court remain[ing] on the juvenile and the seriousness of the offenses alleged," *id.*, the juvenile court noted "[t]he allegations, if proven true beyond a reasonable doubt, demonstrate the Juvenile's reckless conduct with a loaded gun and his disregard for people in the vicinity of the discharge of the firearm, including a 4-year-old child." The juvenile court was not required to find R.S.' alleged conduct less serious because the alleged violence, his mental state, and physical injury could have been more serious. *See id.* ("[W]e disagree that the

8

comparison point in determining whether a particular offense is serious is all other felonies, such that the fact that more serious felonies were not committed negates the possibility that a comparatively less serious felony could be considered serious.")

Although not required, it was within the juvenile court's discretion to find that these offenses were serious, that they involved force and violence, and that the protection of the community required R.S.' certification for prosecution as an adult.

### Factors 4 and 5

R.S. next asserts he did not show a pattern of conduct severe enough to justify certification for prosecution as an adult. He contends the juvenile court's findings indicate a lack of careful consideration because "being the victim of a crime, and a mother reporting that R.S. would get mad and break things," should not weigh in favor of finding that a child is incapable of rehabilitation because such behavior does not show escalating violent conduct as to indicate a criminal pattern.

But "[i]n reviewing a juvenile court's determination for an abuse of discretion, we will not reweigh the evidence or determine the reliability or credibility of the witnesses." *Int. of D.D.B.*, 660 S.W.3d at 74. Factors four and five instruct the juvenile court to consider whether the juvenile's alleged offenses are part of a repetitive pattern indicating he is beyond rehabilitation under the juvenile code and to assess the juvenile's record and history, including experience with the juvenile system and other institutions. Section 211.071.6(4)-(5). The juvenile court noted, favorably toward R.S., that he had not been adjudicated as a delinquent or truant. However, the court observed that R.S. had been in several incidents involving a firearm. Even though he had been found the victim of a shooting in one of those incidents, the incident "demonstrate[d] a second time that [R.S.] has been alleged to have been in the vicinity where a

9

gun was fired." The court also considered his other contacts with the juvenile system, including several referrals to the juvenile office for missing school and his mother's report that R.S. was beyond parental control. Because those referrals occurred within an eight-to-ten-month period before the allegations giving rise to the certification hearing, the juvenile court described these incidents as "increasingly serious." Although it is unclear how much weight the juvenile court ascribed to these factors, as the court never expressly weighed them for or against certification, "[p]rior referrals, even those which were dismissed, are proper subjects of the juvenile court's certification inquiry." *Int. of T.D.S.*, 643 S.W.3d 510, 525 (Mo.App. 2021). We defer to the juvenile court's assessment regarding R.S.' pattern of conduct and his prior experience with the juvenile system and do not weigh the evidence anew.

### Factors 6, 7 and 8

Regarding the sixth factor, R.S. asserts that the juvenile court erred in finding he was sophisticated or mature because there was a lack of evidence involving indicia of R.S.' maturity. The sixth factor concerns "[t]he sophistication and maturity of the child as determined by consideration of his or her home and environmental situation, emotional condition and pattern of living." Section 211.071.6(6).

At the certification hearing, JO Campbell testified that R.S. seemed to be of "stable persona and [carried] himself as a normal 17-year-old would" based on the fact that R.S. was "living with his mother, and he [did not] have any problems, as far as the community, his home life, things like that." Based on his testimony, on the juvenile court's own observation of R.S., and on the referrals in the juvenile office's report, the juvenile court found R.S. "appear[ed] to be of normal maturity" and "[h]is appearance and the manner in which he conducts himself before the Court gives no indication that he suffers from any mental or physical health disability or

10

concern." We defer to the juvenile court, as it was in the best position to observe R.S. and determine whether this factor weighed for or against certification. *Int. of T.D.S.*, 643 S.W.3d at 525.

Regarding the seventh and eighth factors, R.S. asserts that the juvenile court erroneously concluded there would be insufficient time to rehabilitate R.S., as his age at 17 years and six months meant the DYS would have no more than six months until the age of 18 to rehabilitate him. The seventh factor considers the "age of the child" in determining whether rehabilitation is possible in the juvenile system, while the eighth factor considers "[t]he program and facilities available to the juvenile court in considering disposition." Section 211.071.6(7)-(8). R.S. asserts the juvenile court mistakenly assumed DYS could only hold R.S. until his eighteenth birthday when juvenile divisions are statutorily authorized to commit a youth to DYS custody until the youth's nineteenth birthday.

Yet the juvenile court expressly noted that "[t]ypically, the [DYS] pertains with Juveniles only until age 18, though by Statute they can, under certain circumstances retain the child until age 19." The juvenile court acknowledged that R.S. could be held until nineteen and nevertheless found that age was "a significant factor" towards certification. "We defer to the juvenile court's findings regarding the time needed to rehabilitate a juvenile. A juvenile court may properly find, in its discretion, a period of even five years may not be enough to rehabilitate a juvenile." *Int. of T.D.S.*, 643 S.W.3d at 526 (internal citation omitted). Given that JO Campbell testified that in his opinion, commitment to the DYS would not be beneficial, and there were no other programs in the juvenile system which could rehabilitate R.S., the juvenile court did not abuse its discretion in weighing these factors in favor of certification.

11

Based on the totality of the circumstances, we do not find that the juvenile court abused its discretion in dismissing the juvenile cause of action and permitting R.S. to be prosecuted under the general laws. Based on the alleged offenses including: allegations of force and violence against a person, R.S.' age (seventeen years and six months), multiple referrals in the juvenile system, several incidents involving a firearm, and the lack of available resources to the juvenile court in treating R.S., the juvenile court's ruling was not "so unreasonable and arbitrary that it shocks the sense of justice and is clearly against the logic of the surrounding circumstances." ***Int. of D.J.S.***, 670 S.W.3d at 253 (internal quotation marks omitted).

## Decision

The juvenile court's judgment dismissing the petition and certifying R.S. for prosecution as an adult is affirmed.

BECKY J.W. BORTHWICK, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCURS

DON E. BURRELL, J. – CONCURS